### NELSON SARGENT *v.* LABAN ADAMS.

An agreement in writing to lease for a term of years "the Adams House, situate on Washington Street in Boston," may be proved by parol to have been intended by the parties to include only so much of the building as was fitted up as a hotel, by the name of "the Adams House," and not the separate shops which occupied the whole of the ground floor except the entrance to the hotel.

Money paid under an agreement for a lease cannot be recovered back on the ground that the lease tendered contained covenants on the part of the lessee to cleanse the drains and vaults, and not to assign nor underlet, nor make alterations without the consent of the lessor, if the lessor at the time of such tender requested the lessee to specify his objec tions to the lease, and he refused.

ASSUMPSIT for money had and received. Writ dated March 23d 1847. The case was submitted to the decision of the court upon the following facts, reserving the objections specifically taken :

The·defendant, prior to the 11th of February 1847, had fitted up the old Lamb Tavern, on Washington Street in Boston, as a hotel, under the name of the Adams House. Beneath it he had built five stores, which together occupied the whole of the ground story, except the entry to said house, which was numbered 371, and each of which stores was fitted for occupancy as such, and was occupied by a different tenant for the sale of goods, except the store numbered 3, which was vacant.

On said 11th of February, mutual bonds were entered into between the parties, by one of which the defendant doth covenant

and agree with the plaintiff and Otis M. Moulton " to lease and let to the said Sargent and Moulton, for the term of ten years, the ' Adams House,' so called, situate on Washington Street in said Boston, and numbered 371 on said Washington Street, for the annual rent of ten thousand and five hundred dollars, payable monthly, together with the taxes ; " and " to sell and deliver to the said Sargent and Moulton a good and perfect bill of sale of all the furniture belonging to the said Adams in the said Adams House, for the sum of twenty seven thousand dollars ; fifteen thousand dollars to be paid upon the execution of the said bill of sale, and the balance of twelve thousand to be secured by a mortgage upon said furniture ; " and to execute and deliver the necessary papers and deliver possession of the premises on the 22d of said February. By the other bond, Sargent and Moulton covenant and agree with Adams to pay the stipulated rent and taxes for such a lease, and to purchase the furniture upon the terms above stated, and to deliver all necessary papers by the said 22d of February. In these bonds, all the parties are styled innholders. On the 23d of February, the plaintiff paid, in part performance of this agreement, $1,100, (being the money sought to be recovered back in this action,) and the time of performance was extended by agreement to the 1st of March.

It is agreed, if it be competent for the defendant to show the same by any oral evidence outside of the bond, which the plaintiff denies, that the parties originally agreed by parol to let and hire the house proper, exclusive of the said stores, for the annual rent of $10,000 and taxes ; that afterwards, before the execution of the bonds, it was agreed by parol that store No. 3 should be included, at an additional annual rent of $500, the intention being that this store might be altered by the lessees into a ladies' entrance.

On the 1st of March the defendant executed and tendered to the plaintiff a lease from himself to the plaintiff and Moulton of " that building situated on Washington Street in said Boston, now kept as a hotel, and known as the Adams House, together with the store under the said hotel, numbered three," for ten years, at an annual rent of $10,500 and taxes, with covenants

on the part of the lessees to cleanse the drains and vaults at their own expense, and not to assign nor underlet, nor make any alterations without the written consent of the lessor. On the evening of the same day the parties met by appointment at the Adams House to perform their agreement; and the plaintiff laying down the lease previously furnished him for examination, said to the defendant, " I am here to fulfil my part of the agreement, and I want you to fulfil yours." The defendant answered, " What is the objection to the lease? " The plaintiff replied, " You know as well as I do·it is not according to the bond." The defendant said, " It is. I have taken advice upon it, and I will not give you any other." The plaintiff answered, " It is not. When it is, I am here ready to fulfil my part of the agreement. I am here for that purpose," (at the same time laying down a sum of money upon the table,) " and I want you to fulfil yours." Whereupon the defendant left the room, and after a short absence, returned with his counsel, and tendered to the plaintiff this lease, and the bill of sale mentioned in the bond, and said he was ready to deliver the property mentioned in the bond. The plaintiff read the papers; and the defendant then asked him whether they were right, repeating the question frequently, and requested him to say wherein they were wrong, saying, if they were not right, he would make them so. To all which the plaintiff sometimes made no reply, and sometimes said, " ask me no questions," or " I am not here as a witness," or " I cannot say." The defendant frequently requested him to produce his money, but he did not offer any, nor did he say the papers were wrong, nor specify any objection to them, but declined to make any answers, except as above, and thereupon the interview terminated mutually.

If the court are of opinion that it is competent for the plaintiff now to object to any of the covenants or conditions, as showing that the lease is not according to the bond, the defendant offers to prove, that the covenants respecting underletting and alterations are usual and proper covenants in such leases; that the covenant respecting cleansing vaults and drains was expressly agreed to between the parties; that the lease was prepared

under the direction of Moulton, one of the obligees ; and that it was agreed and recognized by the parties, both before and after the execution of the bond, that the plaintiff was to have the right to alter No. 3, so as to make a ladies' entrance into the hotel as aforesaid ; and if this evidence is competent, which the plaintiff denies, it is to be submitted to a jury.

*T. Willey & D. H. Mason,* for the plaintiff. The sum of $1,100 was paid towards the bond for a lease, and if the defendant did not tender a proper lease, this action lies to recover it back *Griggs* v. *Austin,* 3 Pick. 22. *Judson* v. *Wass,* 11 Johns. 525.

The defendant, by his bond, obliged himself to give a lease of the whole of " the Adams House," so called, numbered 371 Washington Street; and it is admitted that the stores numbered from 1 to 5 Adams House, constitute, together with the entrance numbered 371, the first story of that house. The bond does not describe it as a hotel, and the word " house " of itself includes the whole house built on the same foundation, and covered by the same roof. Here is no latent ambiguity, and parol proof is inadmissible to vary or explain the bond. Besides ; the evidence offered is not to show that the five stores were not part of the Adams House, but that, prior to the execution of the bond, the parties made two oral agreements ; one to exclude all the stores; the other to include only No. 3—which is contradictory of the bond. *Townsend* v. *Weld,* 8 Mass. 147. *Miller* v. *Travers,* 8 Bing. 249, 250. *Locke* v. *Whiting,* 10 Pick. 279. *Noble* v. *Bosworth,* 19 Pick. 314. *Spencer* v. *Tilden,* 5 Cow. 144. *Jackson* v. *Bowen,* 1 Caines, 358. 3 Stark. Ev. (4th Amer. ed.) 1026 & note.

The lease tendered was not a compliance with the bond, because it included only one of the stores, and because it contained unusual covenants on the part of the lessee. Chit. Con. (8th Amer. ed.) 281. *Flight* v. *Booth,* 1 Bing. N. C. 370. *Waring* v. *Hoggart,* Ry. & Mood. 39. The plaintiff is not bound to show that he had the money ready ; he was not obliged to pay for furniture till he had a house to put it in ; and his want of means would not make this a sufficient lease. It is enough that the plaintiff offered to do his part, and called upon

the defendant to do his, which he declined. *Parker* v. *Perkins*, 8 Cush. 318. *White* v. *Mann*, 26 Maine, 361. The defendant was bound to tender a substantial compliance with his bond; and the plaintiff was not bound to make a lease for him, nor to specify his objections to the one tendered. *Collett* v. *Thompson*, 3 Bos. & Pul. 246. *Roberts* v. *Rowlands*; 3 M. & W. 543. *Squire* v. *Tod*, 1 Campb. 293. But if the plaintiff would otherwise have been bound to specify his objections, the defendant's statement that he had taken advice as to this, and would give no other, rendered it unnecessary. *Lutweller* v. *Linnell*, 12 Barb. 512. *Franchot* v. *Dach*, 5 Cow. 506.

*R. Choate & C. C. Nutter*, for the defendant.

SHAW, C. J. The questions in this case arise upon the construction of the bond from Adams to Sargent and Moulton, and the refusal or failure of Adams to perform it on his part, so as to entitle Sargent to recover back the advance, as money paid on a consideration which had failed.

This is plainly one of that class of cases, in which the contracts of each party, being mutual and dependent, are to be performed simultaneously. Neither is bound to perform on his part, unless the other is ready at the same time to perform on his part. The party who would seek to recover of the other upon a breach of contract, or failure to perform, must aver and prove his own offer and readiness to perform, and that the other party has failed to perform on his part. Both parties, apparently aware of this rule, met on the 1st of March, the extended time for mutual performance. The defendant produced a lease, already signed and sealed, and which had previously been exhibited to the plaintiff for inspection; and also a bill of sale of the furniture, to which no objection seems to have been made; and offered to deliver them to the plaintiff, on receiving the money and securities, to be paid and delivered to him at the same time by the plaintiff.

It is very manifest, from the description in the lease offered, that it did not include but one of the stores in the Adams House, under the part used for a hotel; and the first question is, whether the obligation to let the Adams House at a specified

rent did include the five stores. If it did, the lease excluding four of those stores, being an important and valuable part of the whole estate, could not be a substantial performance of a contract to let the whole at the same rent.

What was embraced in the bond by the description " Adams House ? " It is not therein described as a hotel. The parties are indeed described as innholders; but this, being a mere description of the persons, affords no light. It is built on the site of the old Lamb Tavern; but that leads to no definite conclusion that it was itself a tavern. Looking at the mere contract itself, it might have been free from all ambiguity; because, in applying the description, it must have appeared that there was an estate definitely described, and as well known by that name as the Old State House or the Boylston Market House. It is purely matter of description, and must be established by evidence *aliunde*. But the facts detailed in this statement do show that there is an estate corresponding in part to the description, to wit, a house known as the Adams House, in Washington Street, certain parts of which had been previously, and up to the time and at the time of the contract, used and occupied as a hotel; and certain other parts of it used and occupied for shops for the sale of goods, let to separate tenants, with no interior communication, nor any other connection with the residue, as a hotel, than that of relative position, being supported by the same foundation and sheltered by the same roof. But this is common, especially in cities, with entirely distinct tenements or holdings. This description, therefore, so brief in its terms, when applied to the estate in question, leaves it in doubt whether these stores are excluded or included in the term " Adams House." But yet this is the whole of the description used in the bond, expressive of the subject matter of the lease.

It is argued on the part of the plaintiff, that " house " means the whole of a house, and not part of a house; that it includes all upon the same foundation and covered by the same roof. This would be quite plausible, indeed an argument of considerable weight, if the term was used in its generic sense, as "my house, situated in " such a town, or such a street. But it is

plainly used as a proper name, or specific designation; and taken in connection with the fact that hotels are so named, it leaves it still doubtful. If it had been a stipulation to convey in fee, instead of to lease, it would carry a much stronger conviction that it intended the soil, *usque ad cœlum.* But as a hotel may be complete in all its parts without including separate tenements under it, and is often designated by the term house— as the Tremont House, the Winthrop House, and the like—and as it looked simply to a term of years, with the furniture of the hotel, it leaves the matter questionable. In ascertaining what is parcel, what are the monuments, bounds, abuttals, names of streets or places, it is always competent, and indeed often necessary, to go into parol evidence, or evidence *aliunde.* A very palpable instance arises in this very description, short as it is. The estate is described as situated on Washington Street. Should a modern conveyancer be tracing back this title, he would find an estate apparently the same in other respects, but described as standing on Newbury Street. He must seek abroad for evidence, which he would soon find, that not many years since the name of Newbury Street was changed to Washington Street.

In seeking for all surrounding circumstances, to throw light on matter of description, the object is to obtain from the words used in the instrument, in the light of all such circumstances, the intent and meaning of the parties. In doing this, it is an established rule, that if some of the circumstances do not correspond with a probable exposition, they will not prevent its adoption, if, from the whole description, the meaning or intent of the contractor or devisor can be collected, under the maxim, *falsa demonstratio non nocet.* But in coming to apply the description to the contract, and after all these means of exposition have been exhausted, there may remain an uncertainty in such application; this constitutes a latent ambiguity; and then the law is well settled that parol evidence is admissible to explain what was intended.

And upon consideration of the evidence, the court are of opinion that this constituted a case of latent ambiguity, as that is understood and explained in this department of the law.

The brief description " The Adams House " created no ambi
guity on the face of the deed; it was to be presumed that there
was a house or estate well known to which it would apply; and
there was no ambiguity in the language of the contract. One
party intended to let and the other intended to hire a tenement,
so named and so known. But when this designation came to
be applied to the subject, there were two subjects to which, with-
out any forced construction, it might apply, to wit, the site or
soil on which the Lamb Tavern formerly stood, and the house
built upon it; or it might apply to a tenement, consisting of suites
of apartments other than the stores, which together made a com-
plete hotel. It was a lease for years; and such a tenement
might be composed of parts of a building divided horizontally,
as well as by metes and bounds on the surface; though, were it
a deed in fee, it would be construed otherwise. The stores, be-
ing numbered 1, 2, 3, 4 and 5 Adams House would simply
show that they were parts of the building; but their being
wholly detached, without any interior communication, and built,
as the case finds, under the Adams House, would lead to a con-
trary conclusion. For this reason, we are of opinion that this
was a latent ambiguity; and, within the rule, parol evidence
was admissible to explain it. 3 Stark. Ev. 1026. It falls under
that class of cases where the very general description adopted in a
contract will apply to two distinct subjects, and so there is a
latent ambiguity. In the case of *Doe* v. *Burt*, 1 T. R. 701, the
question was, what passed by the terms of a lease, where it was
contended, upon the maxim *cujus est solum ejus est ad cœlum
et ad inferos*, that a cellar under a portion of the leased prem-
ises should pass. Evidence *aliunde* was admitted. Mr. Justice
Grose said, by way of illustration, " It might as well be con-
tended that a lease of a house in the Adelphi would pass the
warehouses underneath."

The parol evidence being admitted, the case is put beyond all
doubt by proof that the contract did not include the five stores
in the lower story of the hotel. The mere designation " Adams
House " would not include either one of the stores; but the
lease, as actually drawn up and offered by Adams, did include

store No. 3. The reason of this is explained by resorting to the parol proof; but, independently of this, the including of this store No. 3 in the leased premises, at the rate of rent stipulated by the contract for the hotel only, could not be objected to by the lessees, being manifestly for their benefit.

The court are of opinion therefore that, so far as the objection to the sufficiency of the lease offered by the defendant was founded on the consideration that it did not embrace the stores under the Adams House, it was not well founded, and that the lease in this respect conformed to the contract.

We have already stated that this was a case where the parties were to perform simultaneously, and where each must prove readiness and preparation on his part, before he can charge the other with default. Under this rule, it might be a question, as here were mutual agreements to enter into a lease by indenture, to become binding on both parties, whose particular duty it was to prepare these indentures; and where one offered a draft for consideration, which the other declined accepting, whether the party objecting should not have offered a draft on his part, for the consideration of the other side, which he would be willing to execute. But perhaps this is a mere abstract question. The plaintiff might, no doubt, have tendered such a draft, whether he was bound to do it or not. It was his duty to do enough to show his present readiness to perform. The demise of the premises and the sale of the furniture, on the one side, and the payment of the stipulated portion of the purchase money, and a mortgage on the furniture for the balance, on the other, were parts of one entire contract, so that one was not to be done without the other. Without stopping to inquire whether in strictness the plaintiff should have counted out or produced money enough to pay the required sum, he must at least show a default on the part of the defendant. Tried by this test, it appears that the defendant did, in the first instance, prepare and offer an executed lease, demising the premises agreed for, for the term stipulated, at the rent agreed, together with a bill of sale of the furniture, to which there was not then and has not since been made any objection.

The plaintiff now makes other objections to the lease offered, because it contained covenants, on the part of the lessees, not to assign or underlet during the term, to make no alterations in the premises without the written assent of the lessor, and to scour and cleanse the drains on the premises; and contends that the lessees were not bound to execute these covenants, because they were burdensome, and imposed an unusual restraint on their rights as lessees, and were not stipulated for by the contract. If the case depended upon the question whether the lessees were bound by the terms or fair implication of the contract, to take a lease with these restrictions, it might require further consideration, and it might be necessary to determine whether they were not bound to execute a lease with reasonable and usual covenants, and whether these were, usual and reasonable.

But the court are of opinion that it is a sufficient answer that these objections were not made at· the time when the terms of the indenture might have been amended and modified so as to obviate these objections. Adams having produced a draft of lease on his part, which was a substantial performance, if the other parties had objections to the form of the instrument, they should have made specific objections at the time. But it appears by the evidence that neither these specific objections nor any others were made at the time. Upon repeated inquiries by Adams what the objections of the lessees were, no specific objection was made, but only that it was not according to the bond. It is no sufficient answer to say that at one time Adams said: " This lease is according to the bond ; I have taken advice upon it, and will give you no other;" because the defendant afterwards left the room, and after a short time returned with his counsel, tendered the bill of sale, the plaintiff read the papers, upon which the defendant asked him if they were right, and frequently requested him to say whether they were wrong, and said if they were not right, he would make them so. And to these requests the plaintiff made no satisfactory reply, and made no objection to the papers.

For these reasons, and without deciding whether the plaintiff

has proved his own readiness and ability to perform on his part by payment of the sum stipulated, the court are of opinion that he has not shown a default on the part of the defendant which would warrant him in rescinding the contract, and which would be a failure of consideration, enabling him to recover back the money advanced, as upon a consideration which had failed.

*Judgment for the defendant.*