THERMAL BELT SANITARIUM COMPANY v. HARTFORD INSURANCE COMPANY.

(Filed 23 December, 1911.)

1. Insurance — "Adjoining and Communicating Additions" — Property Insured—Parol Evidence—Interpretation of Policy.

In an action by a sanitarium company for loss under a policy of fire insurance on its "two-story frame metal-roof building, with adjoining and communicating additions, etc.," recovery was resisted on the grounds that the policy did not cover a cottage about 15 or 20 feet from the main building, as it was not an "adjoining or communicating addition": *Held,* (1) evidence was competent to fit the cottage to the description in the policy which tended to show that the cottages contained rooms for the patients of the sanitarium who were, under certain circumstances, treated in these rooms; that all were under the same management and that there were call-bells from each of these rooms which communicated with the main building, and that all had the same system of sewerage and water pipes; (2) that the cottages would come within the descriptive terms of the policy as a matter of law; (3) that testimony that the cottages were insured in separate and distinct amounts in another policy would relate to the weight of the testimony and not to its competency.

2. Insurance, Fire—Title—Evidence—Issued to "Insured"—Possession.

Evidence that the policy of insurance "was issued to the insured," and that the insured was in possession and control of it, is sufficient upon the question of the plaintiff's title, in his action to recover damages from fire to his property on his policy of insurance, and conclusive unless in some way questioned or impeached.

APPEAL from *Lane, J.,* at May Term, 1911, of POLK.

Civil action to recover on two concurrent fire insurance policies. The evidence tended to show that plaintiff corporation held two concurrent fire insurance policies, alleged to cover its main building and four cottages situate near the same, and "That on 5 May, 1909, a fire occurred which destroyed one of the cottages and also damaged the main building. Defendant resisted recovery for destruction of the cottage, claiming that same was not covered by the descriptive terms of the policy. The following is the description, which it seems was typewritten and annexed to each of the policies:

"$2,000 on the two-story frame metal-roof building, with *adjoining* and *communicating* additions, including foundations, piping and plumbing, fixed heating and lighting apparatus and all permanent fixtures as a part of said building while occupied as a sanitarium, situate detached in the town of Tryon."

And in reference thereto and over defendant's objection this, with other evidence, was admitted, being the relevant part of a conversation between the general manager of plaintiff company and the insurance agent in reference to the acceptance of the policies and at the time same were delivered.

Q. Did you have any conversation with Mr. Engle about the policies? A. Yes.

Q. What was it?

Objection by defendant. Overruled, and exception.

A. I read over the typewritten portion of the contract and said: "I don't like this adjoining and communicating. It is not right, because the buildings are not adjoining." Mr. Engle said the insurance companies considered buildings as close together as those were, adjoining and communicating, when used for the same purpose.

Defendant's objection to this answer overruled, and defendant excepts.

Q. How many buildings were there in the plant? A. Five.

Q. What did they consist of?

Defendant's objection overruled, and defendant excepts.

A. Consisted of a main building, or administration building, and four cottages. These cottages were used for the sick patients' rooms and the main building for the nurses and doctors, housekeeper, dining-room, kitchen, and office room.

Q. Were there any kitchens in the cottages?

Defendant's objection overruled. Defendant excepts.

A. No.

Q. What was in the cottages?

Defendant's objection overruled. Defendant excepts.

A. First a sun room on the outside, a hall, four bedrooms, bath-room, and trunk-room.

Q. How far were they from the main building?

Defendant's objection overruled. Defendant excepts.

A. About 15 or 20 feet.

Q. Was there any communication with the main building? A. Annunciator system running to the main building. (Defendant's objection overruled. Defendant excepts.) These were for the patients to summon the nurses from the nurses' rooms; there was a button in each room, with an electric wire communicating with the bell in the main building.

Q. Were there any laundries in the cottages? A. No.

Q. Was it possible for anybody to use the cottages independent of the main building, as a separate establishment? A. No.

To all of the foregoing evidence the defendant in apt time objected. Objection overruled, and defendant excepted.

Q. Going back to the main building, describe that. A. The main building was a two-story building, the first floor consisting of a porch running around three sides, a hall and writing-room, or office, reception-room, dining-room, pantry, and the housekeeper's room.

Q. What was the shape of this building apart from the porches? A. It was an oblong building.

Q. Were there any additions to that building? A. No, there were no additions to the main building proper; it was one building, oblong in shape.

Q. Do you recollect a fire occurring in your property there? A. Yes.

Q. About when was that fire? A. It occurred about 5 May, 1909.

Q. What was destroyed in that fire, if anything? A. One of the cottages, and the main building and another cottage were damaged.

There was other testimony more fully describing the physical placing of the cottages and their purpose and uses in relation to the plant.

On the trial a witness, E. Brownlee, having an interest in the property and its management, was allowed, over defendant's objection, to say that the property was owned by plaintiff, the Thermal Belt Sanitarium Company. In this connection, it appeared that plaintiff was in possession and control and management of the property when same was insured and at the time of trial. There was verdict for plaintiff for amount of loss.

Judgment, and defendant excepted and appealed.

*Harkins & Van Winkle for plaintiff.*
*A. S. Barnard for defendant.*

HOKE, J., after stating the case: The descriptive words of this policy and the physical placing of the cottages and their use and purpose in connection with the plant and its operation are made to appear further as follows: "The location of the buildings is on top of the hill above the town, consisting of one administration building, which is a two-story frame metal-roof building, longer than wide, with nothing in the way of a lean-to nailed to the building. The rest of the sanitarium property consisted of four cottages, one story, metal roof, consisting of four rooms, bath and trunk room, located in a semicircle; two cottages, No. 1 and No. 4, about 20 feet from each corner of the main building, the other cottages about 20 feet distant from each other, making a half circle around the front of the main building. They have an electric bell system. There was a

series of wires running from each room of each cottage to the hall of the administration building, and there was also a water supply system, extending from a tank on the upper part of the grounds to the main building, and from the main building to all the cottages, one continuous system. Also a sewerage system accommodating all four cottages, one line going from the main building to a cesspool, and a line going from each of the cottages to the main line. There was a push-button in each room, so that when the patients needed assistance they could ring the bell in the main building.

Q. What were those cottages used for? A. Sleeping rooms for the patients.

Q. Used for any other purpose? A. No.

Q. Were there any kitchens, dining-rooms, or laundry in these cottages? A. No.

Q. How were they used in connection with the main building?

Defendant's objection overruled; defendant excepts.

A. Used as sleeping-rooms for patients. The patients used those for bedrooms and went to the main building for meals, if well enough. (Defendant's objection overruled; defendant excepts.) And for consultation with physicians; but if not well enough, the meals were sent out from the main building, and if in their beds, the doctor's nurses visited them in their rooms.

On this or similar facts there is authority tending to support the position that the cottages would come within the descriptive terms of the policies as a matter of law. *Massey v. Belisle,* 24 N. C., 170; *Marsh v. Insurance Co.,* 71 N. H., 252; *Maltherson v. Kimball,* 70 Ark., 451. But in any event—and this, in our opinion, is the more correct view—the words are so far ambiguous as to permit the parol testimony in aid of the description and so as to carry out the true intent and agreement of the parties. *R. R. v. R. R.,* 147 N. C., 382; *Ward v. Gay,* 137 N. C., 400; *Merriam v. U. S.,* 107 U. S., 441; *Sargent v. Adams,* 69 Mass., 72; *Robinson v. Insurance Co.,* 87 Me., 399; *Lumber Co. v. Insurance Co.,* 145 Mich., 558. *Insurance Co. v. Tye,* 1 Ga. App., 380, an authority much relied upon by defendant, could well be distinguished from the case

presented here. The decision proceeds upon the supposition that under certain conditions parol evidence could be received with the view and purpose of changing the conclusion reached. When we consider the relevant facts in evidence, the position of the cottages, only 20 feet away, the physical connections between these and the main building in reference to water, light, sewerage, etc., "the inseparable identity of use" and with nothing to fill the descriptive words, "adjoining and communicating additions," except the cottages, there is assuredly no error to defendant's prejudice in referring the question to the jury as to whether the policy did and was intended to cover and protect the cottages. The position is not affected by the fact that a former policy had insured the main building and the cottages in separate and different amounts. This is an opposing fact, bearing on the weight of the testimony objected to, and did not affect its competency. It was this fact which called forth the protest of plaintiff's officials as to the insufficiency of the description, and which was quieted by the assurance of the company's agent that the description as written would include the cottages. There was no reversible error in permitting the witness to say that plaintiff was the owner of the property. This is a case where title is presumed *prima facie* from the possession and control of the property, and, further, the issuance of the "policy to the insured" was itself *prima facie* evidence of title, conclusive for the purposes of such an action as this unless in some way questioned or impeached. 19 Cyc., 941.

There is no error, and the judgment for plaintiff is affirmed.

No error.