J. F. WHITE CO. v. C. A. CARROLL.

(Filed 15 April, 1908).

1. **Liens—Chattel Mortgages—Parol Mortgage—Evidence—Proof.**

In an action to engraft upon a written chattel mortgage a lien by parol upon after-acquired merchandise in defendant's store the plaintiff's evidence tended to show that the defendant gave to B. the written mortgage on his stock of goods to secure him, B., for a debt due. Afterwards the defendant gave the written mortgage to B. to secure a debt he owed the plaintiff. W., the president of plaintiff company, was absent at this time, and upon the trial testified that defendant afterwards told him that the written mortgage given to B. was to secure his company for goods he "had bought or might buy," and that he "never denied the mortgage in all conversations they had had." It further appeared that plaintiff requested further security and defendant declined to give it: *Held*, (1) the evidence was insufficient to establish the parol lien that the provisions of the written mortgage were thereby extended to after-acquired goods in the store; (2) that the expressions used by defendant, as testified to by W., by reasonable intendment referred to the fact that the written mortgage was to secure under its terms goods which defendant had bought or might buy from plaintiff.

2. **Liens—Chattel Mortgages—Correction—Contracts—Parol Evidence—Mutual Mistake.**

To correct a written chattel mortgage given to secure plaintiff for merchandise sold and delivered to defendant while conducting a mercantile business, so as to embrace after-acquired goods, the proof must be clear and convincing that the true intention of the parties was not expressed in the mortgage, and that description of the property now claimed was omitted by mutual mistake, in such manner as not to vary the terms of the written instrument. The evidence of W., the president of the plaintiff company, who was not present at the time the mortgage was given, that defendant afterwards told him it was for goods "he had bought or might buy," and that "he had never denied the mortgage," is insufficient.

3. **Appeal and Error—Agreement of Parties—Harmless Error—Costs on Appeal.**

When the lower court is in error in instructing the jury not to answer an issue as to damages, and the amount thereof is agreed upon in the Supreme Court, the agreement will make the error harmless, but the appellant will be taxed with the cost on appeal.

WHITE CO. *v.* CARROLL.

ACTION tried before *Webb., J.,* and a jury, at February Term, 1908, of GRANVILLE. .

This action was brought to recover a debt of $300 and a stock of goods which the plaintiff alleged had been mortgaged to him by the defendant to secure the indebtedness. The property is described in the mortgage as "All the stock of goods now on hand in the storehouse on College Street occupied by me, consisting of groceries, shoes, notions and general merchandise." At the time the mortgage was given, 15 March, 1900, the defendant, being pressed by his creditors, gave to J. S. Brown, to whom he was indebted, three chattel mortgages, each for $300. J. F. White, who represented the plaintiff company, was not present and did not know the mortgages had been given until they had been registered. One of the mortgages was assigned to him for the plaintiff to secure the defendant's indebtedness to it, which at the time amounted to $220. The defendant told the plaintiff that he had executed the mortgage to Brown and that it would secure him "for what goods the defendant had bought or might buy or for the amount he owed or might owe." The plaintiff contended that the mortgage was intended to embrace not only goods then in the store, but such as were thereafter added to the stock, and, if this was not true, that the defendant afterwards mortgaged the goods described in the complaint to him by parol to secure said indebtedness. The goods seized by the Sheriff and now in dispute were not in the store at the time the written mortgage was given—that is, on 15 March, 1900. The plaintiff's counsel thus states the substance of the evidence: "The plaintiff was a wholesale grocer and defendant a retail grocer, doing business within a few doors of each other in the town of Oxford, defendant being a customer of plaintiff. On 1 March, 1900, the defendant was indebted to plaintiff in the sum of $220 and continued to trade with plaintiff; that J. S. Brown was also a merchant and vice-president of plaintiff company. The defendant was insolvent and was

indebted to Brown and other parties, as well as to plaintiff. He had given Brown security for the indebtedness to him, and about the middle of March, 1900, J. F. White, the president of plaintiff company, being absent, defendant gave the mortgage in controversy to J. S. Brown for the benefit of plaintiff, because certain of his creditors were about to sue, as he believed, for their claims, and defendant told Brown and also J. F. White, when the latter returned, that he had given the mortgage to Brown to secure not only what he then owed plaintiff, but what he might thereafter purchase from plaintiff. Defendant continued to trade with the plaintiff up to 13 July, 1906, making payments from time to time, so that, though his purchases amounted to more than $10,000 within that period, still at no time did his account much exceed $300, and when it did the plaintiff would call his attention to it and he would promise to reduce it. In July, 1906, plaintiff made demand upon defendant for the payment of the balance due—that is, $382—and, upon defendant's refusal, brought this action."

The court submitted these two issues to the jury:

"1. Is the plaintiff entitled to the possession of the stock of goods described in the complaint?" Answer: "No."

"2. Is the defendant indebted to the plaintiff, and if so, in what amount?"

The court instructed the jury, upon the evidence, to answer the first issue "No," but not to answer the second issue. The plaintiff excepted.

There was a judgment for defendant upon the verdict, and plaintiff appealed.

*Graham & Devin* for plaintiff.
*Winston & Bryant* for defendant.

WALKER, J., after stating the case: When this case was here before (146 N. C., 230), we ordered a new trial, for the reason that, upon the pleadings and the proof *tendered* by

the plaintiff and rejected by the court, the case should have been submitted to the jury to find whether there had been a mutual mistake of the parties in drawing the mortgage of 15 March, 1900, by which goods thereafter acquired and added to the stock were omitted from the description of the property transferred, and if not, whether the defendant had given the plaintiff a separate parol mortgage upon the goods in question. We have carefully examined the evidence introduced at the last trial and have been unable to find any which sustains either of the plaintiff's contentions. There is absolutely none tending to show that a parol mortgage was given, and that upon which the plaintiff relies to establish the alleged mistake in the mortgage of 15 March, 1900, falls far short of doing so. It is true J. F. White testified that the defendant told him the mortgage to Brown was made to secure the plaintiff, White Company, for the goods he had bought or might buy, he having used both expressions, and also that the defendant "never denied the mortgage we held in all the conversations had with him," but this evidence does not tend to show that goods thereafter purchased were intended to be covered by the mortgage and that the description of them was omitted by the mutual mistake of the parties. The last expression, when considered in connection with what precedes and follows it, evidently referred to the plaintiff's right to the mortgage by virtue of the transfer from Brown and not to the goods which the parties intended should be conveyed by it. If it had referred to the goods the mere negative proof that the defendant "had not denied the mortgage," especially when there was no proof that he was called upon to make a denial, would not tend to show that the goods now claimed by the plaintiff were intended to be conveyed and that the description of them was omitted by a mutual mistake. Indeed, it is difficult to conceive how this can be so, or how there could have been any mutual mistake, as J. F. White was not present when the mortgage was given. Besides, the defendant ex-

pressly denies that the mortgage was drawn otherwise than contemplated by him and Brown, and the latter certainly did not testify to any such fact. He says in his deposition that at the time the mortgages were executed he was acting individually and not for the J. F. White Company, and that afterwards Carroll asked him to transfer one of the mortgages to the White Company. This evidence only tends to show that Carroll intended that the mortgage so transferred to the White Company should secure not only his then existing indebtedness to the White Company, but also any indebtedness for goods he might thereafter buy from it. That is all. The proof, therefore, does not correspond with the allegation of the plaintiff. Indeed, the evidence goes to show that Carroll did not intend to give a lien on goods acquired after the date of the mortgage, for when the plaintiff applied to him for additional security he refused to give it and merely replied that he would reduce the amount of the debt by payments. The plaintiff, in order to succeed in attaching a lien to the property in controversy, was required to show by clear and convincing proof that the true intention of the parties was not expressed in the mortgage and that the description of the property which it now claims was omitted by a mutual mistake. *Warehouse Co. v. Ozment,* 132 N. C., 839; Bispham's Equity, sec. 469; *Ely v. Early,* 94 N. C., 8. Oral evidence would not be competent to contradict or vary the written instrument or, in other words, to show that it had a meaning not expressed in it by the parties. It is only admissible in equity to correct it, and thereby to conform it to their true intention and agreement. *Lehew v. Hewett,* 138 N. C., 6. The Judge, therefore, was right when he held that there was no evidence to sustain the affirmative of the first issue, for that was virtually what he decided. *Latta v. Bell,* 122 N. C., 641; *Baker v. Mitchell,* 123 N. C., 337.

We think he erred in withdrawing the second issue from the jury. But defendant's counsel agreed in this Court that

judgment might be entered for the amount of the defendant's indebtedness to the plaintiff.    It is not distinctly stated in the record what the amount is.    In the complaint the principal is fixed at $300, but no date from which interest runs is given. If the correct amount appeared we could direct judgment to be entered for it, but as it does not the case must be remanded, with directions to enter judgment in the Superior Court for the proper amount, with interest and costs.    If parties cannot agree upon the amount it will be ascertained by a jury or otherwise as the law directs.    We affirm the Judge's ruling upon the first issue, but as there was error in withdrawing the second issue from the jury, though corrected by agreement here, the defendant will pay the costs of this Court.

Modified and Affirmed.