Gaston, J.
 

 The first exception taken by the appellant is because the Court submitted it to the Jury to enquire, whether the promise of the defendant to pay the sum demanded as rent was absolute or conditional, and if absolute, whether it was made in consideration that the defendant’s house was upon the plaintiff’s lot, or in consideration of his forbearing to sue, and in compromise of a doubtful right. We do not think this exception well founded. No doubt the construction of all contracts, in the proper sense of the term
 
 construc
 
 tion.i is a matter of law, and therefore proper for the. determination of the Court. In written contracts, which cannot be modified or explained by parol, the terms of the contract are fixed, and the meaning of those terms is a question of law. Where the contract has not been reduced to writing, and its terms are precise and explicit, nothing more remains for determining the effect of the agreement, than declaring its legal meaning. But if the contract be by parol, and the parties dispute about the terms of the agreement, and these are obscure or destitute of precision, or to be inferred from the conduct of the parties, the ascertainment of those terms is in the first place necessary, and this is clearly a question of fact Such was the case with respect to the contract under consi. deration. . The plaintiff stated to the defendant as a fact, that it had been discovered that her house was two feet upon his lot. Upon this information she promised to pay him four dollars per annum, while it remained there. At the expiration of the first year, when the rent was demanded, she refused to pay, alleging that the house was altogether upon her own land. After this refusal she did pay the four dollars, upon his express promise to refund it if it should turn out
 
 *177
 
 that the house was not upon his lot. The parties then agreed upon a mode, by which the boundaries of their respective lots should be determined. Unfortunately the attempt thus to determine their boundaries failed, and the plaintiff sued for the next year’s rent. Now it seems to us clear, that upon what terms and upon what consideration the defendant promised to pay rent, was an enquiry of fact, fit for the determination of the Jury.
 

 The next exception taken is, because of error in a part of the Judge’s instructions on the much disputed question of the location and boundaries of the plaintiff’s lot. This question was supposed- to involve two enquiries. The first was what was the eastern line of the Gordon acre lot, of which the plaintiff’s lot was admitted to be a part, whether it wag the line E or A B H, as claimed by the plaintiff, or the line 1 2 9, as insisted by the defendant; and secondly, if it were the line ABH, did the eastern boundary
 
 oí
 
 the plaintiff’s lot reach- that line. The only evidence directly fending to establish the controverted boundary of the Gordon acre, with the exception of that which will be hereafter particularly noticed, was reputation respecting its beginning corner, and this was contradictory. There was a reputation that á stone at the letter E was the corner, and there was reputation that the stone at the figure 1 was the corner — and the weight of this evidence was left to the Judge. But the location of the plaintiff’s lot whatever might be that of the Gordon acre, was a matter of great difficulty. The first
 
 description
 
 of it in his deed-is “beginning at a stake
 
 in
 
 Gillespie’s line, running S. 15, W. 94 feet 4 inches,, to a stake in Hay Street, thence on said Street No. 70, W. 30 feet to a stake, thence No. 15, East 74 feet 6 inches to a- stake in Gillespie’s line, thence with-said line to the beginning.” According to'this description its location was impossible, because in law"it covered no land. Every deed of conveyance must set forth a subject matter, either certain in itself or capable of being re. duced to- certainty by a recurrence to-something extrinsic, to which the deed refers. The stakes may be real boundaries when so intended by the parties, but it is a settled rule of construction with us, that, when they are mentioned in- a deed
 
 *178
 
 simply, or with no'other added description than that of course and distance, they are intended by the parties, and so understood, to designate imaginary points. Every corner in this description is 11 a stake,” or imaginary point — and there is no reference, by which the locality of any one of these points is fixed. Two sides of them are indeed,in
 
 Gillespie's
 
 line, and two of them are
 
 on
 
 Hay Street, and the bearings and distances of alL the points from each other are given. Bat in what part of Gillespie’s line, or on what part of Hay Street the points are, can neither directly nor indirectly be discovered from this description.
 
 But the deed
 
 afterwards proceeds to state that the lot thereby conveyed is
 
 the same
 
 that was theretofore conveyed by William F. Strange, Clerk and Master in Equity, to John J. Coster, by deed registered in said County in book M, No. 2, page 544. Whether this deed to Coster contains any other description than that given in the deed to the plaintiff, does not appear, or whether it refers to any other deed containing a more certain description is not stated. If this were the case, it would seem that the plaintiff' would have availed himself thereof on the trial, in endeavoring to locate his lot. We have doubted, therefore, whether we were not bound to understand, that the reference to the deed from Strange to Coster left the
 
 termini
 
 of the sup-posedlot as incapable of ascertainment as though no reference had been made thereto, and if so, whether we ought Hot on this ground alone to affirm the judgment against the plaintiff. But we have declined to do so, because this objection does not appear to have been taken to the plaintiff’s title on the trial, and because from the controversy about the limits of the Morrison lot it seems to have been in some manner proved or admitted, that the lot of the plaintiff
 
 adjoined
 
 that of Morrison. If it be assumed that this did appear in some of the conveyances, to which reference was either directly or indirectly made by the deed, under which the plaintiff claimed, then the
 
 termini
 
 of that were capable of ascertainment, and in law his beginning was Morrison’s eastern
 
 comer in
 
 Gillespie’s line, and his next corner was Morrison’s eastern corner on Hay Street..
 

 The case does not show what were the
 
 termini
 
 called for
 
 *179
 
 in Morrison’s deed, but it states that if Z be the intersection of Hay Street with the Gordon line/as the plaintiff contended it was, then Z 8 5 would fill the courses and distances of the Morrison lot. We are bound therefore to understand that Morrison’s lot was defined by courses and distances, beginning at that intersection, and we are not at liberty to presume that the description by course and distance was overruled or controlled by any more certain description. If this were so and Z the point of intersection, it would seem to be fatal to the plaintiff’s claim, for although Morrison’s fence ran from C to D for several years before 1831, and whatever might be the effect of a long possession up to that fence in protecting Morrison’s occupation, the fence could not control the calls in the deed, nor change the
 
 termini
 
 therein mentioned. Morrison’s
 
 deed
 
 was to decide where were the two first corners of the plaintiff’s lot; and if these were 5 and 8, then the two other corners being imaginary points, designated merely by their courses and distances from the two first, were
 
 fixed
 
 at 7 6, and he had no title to the
 
 locus in quo.
 
 The legitimate effect of the long existence of the fence, C D, was to raise a presumption that the course and distance of Morrison’s line on Hay Street did terminate at 0, and therefore that the intersection of Hay Street with the Gordon line was not at
 
 1
 
 but at O, or at some point East of Z. And had this been contended for by the plaintiff, the weight of that presumption under all the circumstances would have been a matter proper for the consideration of the Jury.
 

 But the defendant set up title to her lot under a deed made by John Simpson to Henry Patillo, on the 23d of February, 1792, which thus describes it: “A certain lot or parcel of land in the town of Fayetteville, adjoining William Riley’s lot, on the North side of Hay Street, beginning at a stake
 
 called
 
 Newbery’s, Gillespie’s, or Simpson’s corner, running thence S. 15, W. 104| feet more or less, to the plat of the Street, thence along the Street S. 70, E. 24 feet, thence N. 15, E. 1044 feet back.” As to the location of this lot no doubt can be entertained, if at the time of the execution of this deed the
 
 reputation
 
 existed, of which evidence was given in the case, that 17 9 was the Simpson or Gordon line men
 
 *180
 
 tioned in the deeds. In no other way can the defendant have her oblong (or square) of 24 feet front and 104¿ feet backj than by assigning to it the boundaries 1 2 3 4. If the be-giuning was at A or E, and not the figure 1, then a relatively consj(jeraj3[e portion of her front would not be on Hay street or
 
 on
 
 any street, but would be taken away, by being thrown
 
 into
 
 the intersection of Hay and Old Streets. Under this deed, the case states, that she and -those under whom she claimed held possession for at least twenty-five years before 1831. Whatever might be the location of the plaintiff’s lot, if this were the location of the defendant’s lot, her possession under this deed gave her an indisputable title to the ground .on which her house was built.
 

 Admitting however that the proof was not to be credited ■in regard to the reputation that 17 9 was the
 
 Simpson or
 
 -Gordon line mentioned in the deeds, or that such reputation began after the date of the deed toPatillo, we are then brought ■to the particular part of -his Honor’s instructions, to which •the second exception of the appellant applies, While the Palillo deed in its particluar description begins at the reputed Simpson or Gordon corner, and runs the course and distance of the Gordon line, it represents the parcel of land thereby .conveyed as
 
 adjoining
 
 the Riley, or as it is now called, the plaintiff’s lot, and
 
 this,
 
 it was contended by the plaintiff, tended to show that the line of the Cordon acre and of the Riley lot was the same. The Court, in its charge to the Jury,.called their attention to this argument or suggestion .of the plaintiff’s counsel, and told them that
 
 ‘f
 
 unless the East line of the plaintiff’s lot and the East line of the Gordon acre was the same, there wa.s a discrepancy in the general and particular description used in the Pa.tillo deed. How the fact was, it was a question for them to decide — that it might be as
 
 contended
 
 by the defendant’s counsel that the general description meant adjoining Riley’s lot, with the slip between the line of the Gordon acre and plaintiff’s line for an Alley or outlet, as we might in common parlance say two lots adjoined, although there was an Alley or even Street between ■them, or it might be that at the time the Patillo deed was executed the parties were under the impression that the two lines were the same, when in fact they were not; and that
 
 *181
 
 it was for the Jury, from the evidence, the instruction of the Court as to the law, and the suggestions of the counsel, to locate the plaintiff’s lot.”
 

 It is not objected that there was error, because the Court
 
 ° 1
 
 did not instruct the Jury that Patillo and those claiming under him were concluded or estopped from denying that the Riley lot and the Gordon acre had the same common boundary. When there are two descriptions in a deed, it is a matter of every day’s occurrence to determine between them, which shall be followed if they cannot be reconciled. It cannot with propriety be objected that the Court did not allow to the suggestion or argument of the plaintiff’s counsel the effect claimed for it, because his Honor did expressly state that “unless the East line of the plaintiff’s lot and the East line of the Gordon acre were the same, there
 
 xoas
 
 a discrepancy between the general and particular description in the Patillo deed.” It was not error, notwithstanding by the legal construction of the general and of the particular description in
 
 this
 
 deed, these lines were
 
 represented
 
 as being the same, to leave it to the Jury as a question of
 
 fact,
 
 from all the evidence in the case, whether they were the same or not. The Patillo de.ed was not evidence to establish the location or boundary of the plaintiff’s lot further than as it contained declarations of the parties thereto, showing where they understood the boundaries to be, and
 
 they
 
 might have made these declarations erroneously or inaccurately. Nor can it be error, while stating the suggestion of the plaintiff’s counsel on the one side and allowing it its proper force, as showing that the parties to the Prtillo deed did declare the Riley lot co-terminons with the Gordon line, to submit also to be weighed by the Jury, the suggestions on the other side of the probabilities of inaccuracy or error in this declaration.
 

 The counsel for the plaintiff insists that the
 
 termini
 
 of every deed being a question of law, the Judge was bound to say what were those
 
 termini,
 
 and therefore to instruct the Jury that
 
 in laxo
 
 the land conveyed by the Patillo deed was co-terminous with the Riley lot, and that it could not be so if there were a slip or interval, however small, between them. So it would be, if there were
 
 no other
 
 description in the Pa-
 
 *182
 
 tillo deed than that relied upon; but there was another and a more particular description, and the latter, if
 
 it varied from the former,
 
 was to be preferred; and whether it did va°r
 
 mi’
 
 WaS a ciaes^011 fact- His Honor did not say that in
 
 law
 
 “adjoining” might mean “ near,” but he left for the consideration of the Jury whether
 
 in fact
 
 this expression might not have been inaccurately used, as in common parlance it some times is, for “ near;” and this was left, not for the purpose of controlling the operation of the description, but as tending to account for a mistaken representation .of the parties.
 

 It is not unimportant to remark that in relying on the Pa-tillo deed, as evidence of the boundary of his lot, the plaintiff rendered the whole of it evidence for that purpose. He could not insist on a part of the declarations of Simpson and Patillo therein contained and reject the rest. Now, if the matter in controversy is to be determined by these declarations, it must be decided against the plaintiff. They declare the Gordon line and the plaintiff’s line the same, but at the same time they fix that line as leaving 24 feet for the Patillo lot on Hay Street — that is, they declare the line 1, 2, to be the common eastern boundary of the Gordon acre and the plaintiff’s lot.
 

 We have gone more into detail in the examination of this case than at first seemed necessary for the decision of the matter submitted to us, or than was apparently called for by the sum in dispute. But no doubt the
 
 controversy derives
 
 its principal importance from the effect it may have on the conflicting titles of the parties, and a few feet more or less of front in a town lot may be of considerable value. Besides as the determination of this suit does not decide the question of title, and as it is possible, notwithstanding the care which has been taken in stating the case, that we may not have precisely understood all its minutiae, (and in a question of disputed boundary, every circumstance, however minute, becomes of consequence,) we prefer that the parties should have an opportunity of seeing how the case was here regarded, so that no permanent injury may result from any misapprehension of the facts on our part.
 

 
 *183
 
 We see no ground upon which we can pronounce that the judgment below ought to be reversed, and we therefore affirm it with costs.
 

 Per Curiam. Judgment affirmed.