EFFIE GRIMES v. POLLY ANDREWS, BARTON MARTIN AND WIFE, FLORENCE MARTIN, AND D. S. POWELL.

(Filed 22 December, 1915.)

**1. Judgments—Nonsuit—Dismissal—Estoppel.**

Where a cause has not been tried upon its merits, but dismissed for failure of a party to restore a lost record required by order of the court, the judgment of the court can have no more legal effect than a judgment of nonsuit, and does not estop the party from maintaining a subsequent suit for the same cause of action.

**2. Limitations of Actions—Nonsuit—New Action.**

Revisal, sec. 370, requiring that a new action shall be brought within a year after nonsuit or dismissal, applies only when the party would otherwise be barred from his right of action from the lapse of time prescribed by the statute of limitations relating to the cause of action.

**3. Limitations of Actions—Possession of Lands.**

The statute of limitations will not run in favor of a purchaser of lands at a judicial sale who brings his action to recover the lands from the defendant who has continuously been in possession, and who seeks to engraft a parol trust on the plaintiff's title in his favor.

**4. Trusts—Deeds and Conveyances—Parol Trusts—Burden of Proof—Quantum of Proof.**

The vendee of a purchaser of lands at a judicial sale by deed purporting to convey the fee brought his action for the possession thereof, and the defendant sought to engraft on the title a parol trust in his favor, contending that the purchaser had bought the land under agreement that he would convey the same to the defendant upon being reimbursed his expenditures: *Held*, the presumption of law is strongly in favor of the correctness of the deed, and it is required that the defendant establish his case by clear, strong, and convincing proof; and a charge of the court that he must do so by the preponderance of the evidence is reversible error.

**5. Mortgages—Sales—Adverse Possession—Deeds and Conveyances—Color of Title.**

The possession of lands by a mortgagor is not adverse to the mortgagee, and he may not claim under his deed as color of title; and where he continues in possession after foreclosure sale it must be of sufficient character for twenty years to ripen the title in him by adverse possession.

**6. Mortgages—Sales—Possession—Equity—Constructive Notice.**

Where the mortgagor of lands remains in possession after foreclosure sale, and seeks to engraft a parol trust in his favor on the title of the vendee of the purchaser at the sale, his continued possession is evidence of constructive notice to the vendee of the equity he claims.

**7. Mortgages—Foreclosure—Suits—Parties—Mortgagee—Purchaser at Sale.**

Where there are several mortgages on land which are foreclosed by suit, and bought by the junior encumbrancer, and all of the mortgagees are parties to the suit, the purchaser acquires a good title, unless he has purchased with notice of an enforcible outstanding equity. As to whether the junior mortgagor would acquire title if he were not a party to the suit, *quere.*

**8. Mortgages—Foreclosure—Suits—Equity—Notice—Purchasers for Value—Issues.**

The vendee of the purchaser of lands sold by order of court in a suit to foreclose several mortgages thereon brought his action against the mortgagor in possession, who sets up the equity that the purchaser, a junior encumbrancer, had become so under a certain agreement to hold the lands in trust for him. Under the circumstances of this case the Court suggests two issues: (1) "Was the plaintiff a purchaser for value?" (2) "Did she have notice of the equity alleged to have arisen out of the agreement of the mortgagor and the purchaser at the sale?"

APPEAL by plaintiffs and defendants from *Connor, J.,* at March Term, 1915, of PITT.

Civil action to recover the possession of the land described in the complaint.

Defendant denied plaintiff's title and right to the possession, and specially pleaded certain equities to defeat their recovery.

The facts out of which the controversy arose are, briefly stated, these: The land was purchased by Alfred Andrews from W. A. James, and afterwards he mortgaged the same, first, to F. J. H. P. Bryant; second, to D. S. Powell, and, third, to R. J. Grimes. When the debts and mortgages matured F. J. H. P. Bryant brought three suits to foreclose his mortgage, one against Alfred Andrews, another against D. S. Powell, and the third against Alfred Andrews and D. S. Powell, and also prayed for an injunction against the cutting of timber from the land by D. S. Powell under an agreement with Alfred Andrews. The three suits were consolidated and referred to E. A. Moye, who reported to the court that there was a balance of $198 due by said Andrews to Bryant, the mortgagee, and thereupon the court ordered a foreclosure, and appointed F. G. James commissioner to make the sale. Before these orders were made R. J. Grimes interpleaded and, upon his own request, was made a party to the suits by order of the court. F. G. James reported to September Term, 1900, of the court that he had, on 5 June, 1900, sold the land, as he was ordered to do, and that D. S. Powell had become the last and highest bidder, and the purchaser thereof, at the price of $225. His report was confirmed and, under the order of court, he con-

veyed the land to the purchaser, D. S. Powell, by deed dated 18 July, 1901.

The defendant Polly Andrews is the widow of Alfred Andrews, and the *feme* defendant Florence Martin, wife of her codefendant, Burton Martin, is his child and only heir. The remaining defendant, D. S. Powell, was one of the mortgagees and the purchaser of the land at the sale made by the commissioner.

D. S. Powell afterwards conveyed the land, by deed dated 16 August, 1901, to the plaintiff, Effie Grimes, and by it the title to the land was vested in her, at least *prima facie*.

The defendants, in order to rebut this *prima facie* title, alleged, and offered evidence tending to prove, that D. S. Powell had verbally agreed with Alfred Andrews to purchase the land for him at the sale thereof, and convey the same to him on payment of the bid, and also that defendants, other than D. S. Powell and Alfred Andrews, had been in the adverse possession of the land for more than twenty years, and they specially pleaded the same in bar of plaintiff's recovery, and also specially pleaded the ten years statute and seven years of adverse possession under color of title.

Plaintiff replied by denying the adverse possession and averring that there was no parol trust in favor of the defendants pleading the same, and that, if there was, she had purchased for value and without notice of the same.

Upon these contentions made by the pleadings the case came on for trial, whereupon the court submitted issues to the jury corresponding with said contentions, and, in response to them, the jury returned the following verdict:

1. At the time of the sale of the lands in controversy by F. G. James, commissioner, did the relation of mortgagor and mortgagee exist between Alfred Andrews and D. S. Powell with respect to the said land? A. "Yes."

2. At the time of the sale of the lands in controversy by F. G. James, commissioner, did the relation of mortgagor and mortgagee exist between Alfred Andrews and R. J. Grimes with respect to the said land? A. "Yes."

3. Was the land in controversy conveyed by D. S. Powell to plaintiff, Effie Grimes, at the request and for the benefit of her father, R. J. Grimes? A. "No."

4. What sum, if any, did Effie Grimes pay for said land? A. "Nothing."

5. At the time Effie Grimes took the deed for the said land did the relation of mortgagor and mortgagee exist between Alfred Andrews and R. J. Grimes with respect to said land? A. "Yes."

6. Did Effie Grimes or R. J. Grimes have notice, when the deed was made to her by D. S. Powell, of the relation of mortgagor and mortgagee between Alfred Andrews and D. S. Powell with respect to said land at the time Powell bought at the sale made by F. G. James, commissioner? A. "Yes."

7. Did D. S. Powell bid off the land at the sale made by F. G. James, commissioner, pursuant to a parol agreement between himself and Alfred Andrews that he would buy the land for Andrews? A. "Yes."

8. If so, did Effie Grimes have notice of such agreement when D. S. Powell conveyed the land to her? A. "No."

9. Has the defendant Florence Martin, and those under whom she claims, been in possession of the tract of land in controversy, holding the same adversely against all parties, for more than twenty years next prior to the commencement of this action, as alleged? A. "Yes."

10. Has the defendant Florence Martin, and those under whom she claims, been in possession of the tract of land in controversy, holding the same adversely to all parties, for more than ten years prior to the commencement of this action, as alleged? A. "Yes."

11. Has the defendant Florence Martin, and those under whom she claims, been in possession of the tract of land described in the pleadings, holding adversely to all parties under color of title, for more than seven years next prior to the commencement of this action, as alleged? A. "Yes."

12. When was the action entitled "Alfred Andrews, Polly Andrews, and Florence Martin v. D. S. Powell and Effie Grimes" dismissed? A. "November Term, 1910."

13. Did more than twelve months elapse after the dismissal of the action of Alfred Andrews, Polly Andrews, and Florence Martin v. D. S. Powell and Effie Grimes prior to the commencement of this action, as alleged? A. "Yes."

14. Is the plaintiff the owner of and entitled to the possession of the land described in the complaint? A. "No."

15. Are the defendants Burton Martin and wife, Florence Martin, in the wrongful and unlawful possession of the same? A. "No."

16. What is the annual rental value of said land? A. "$20."

At the close of the evidence the plaintiff and D. S. Powell asked for judgment, on the pleadings, admissions, and all the evidence, for the land in controversy and the amount of the annual rent of $20 from January, 1909, and for an instruction to the jury that the fourteenth and fifteenth issues be answered "Yes"; which requests were refused by the court, and plaintiffs excepted.

The court instructed the jury to answer the second issue "Yes" and the fourth issue "Nothing," and plaintiff and D. S. Powell again excepted.

Plaintiff Effie Grimes moved that the court set aside the findings under the ninth, tenth, eleventh, and fourteenth, and fifteenth issues, which motion was at first refused, and afterwards granted as to the ninth, eleventh, fourteenth, and fifteenth issues, leaving the others intact. Defendants, other than D. S. Powell, excepted. The plaintiff and D. S. Powell had duly objected to the submission of the first thirteen issues, and they excepted to the overruling of their motion. They also excepted to the following instruction of the court upon the ninth issue, as to whether there was a parol agreement between D. S. Powell and Alfred Andrews that the former should buy the land, at the sale, for the latter: "The burden of this issue is upon the defendant Florence Martin, that is, she must produce evidence that will satisfy you by its greater weight of the truth of that. By the greater weight of the evidence, the over-bearing evidence, that, prior to the sale, Powell had a conversation with Andrews; that he agreed to come to Greenville and buy this land off for him and to pay for it out of the money that he owed Andrews for the timber that he had cut off of the land." They also excepted to the refusal of their motion for judgment upon the remaining issues, after the others had been set aside, and for $20 as the annual rental value of the land.

The plaintiff's thirtieth assignment of error is as follows: "The court refused to set aside the whole verdict and refused to sign judgment for the plaintiff, but ordered the issues of the verdict which had not been set aside recorded, to which order the plaintiffs Effie Grimes and D. S. Powell excepted." There were other exceptions taken by plaintiff and D. S. Powell to evidence and other matters, but, in the view the court takes of the case, it is not necessary to state them here.

Defendants, other than D. S. Powell, moved to nonsuit the plaintiff. The motion was denied, and they excepted. There are other exceptions of the defendants, but they need not be mentioned here, except the one taken to the refusal of the court to render judgment in their favor upon the remaining issues.

Plaintiff and D. S. Powell and the defendant Florence Martin appealed.

*Julius Brown for plaintiff.*
*Harry Skinner, Albion Dunn, and L. G. Cooper for defendant.*

### PLAINTIFF'S APPEAL.

WALKER, J., after stating the case: The ruling of the court which denied plaintiff's motion for judgment was correct. The dismissal of the former suit, if for the same cause of action, did not constitute an estoppel, as the case was not heard and decided on its merits, but the dismissal was equivalent to a nonsuit, granted because plaintiff in that

suit had not prosecuted the same. It was early decided, in *Bond v. McNider,* 25 N. C., 440, that no judgment, but one on a *retraxit* or on the merits, will bar a subsequent action, and that an entry, "Dismissed at the costs of the defendant," is not to be considered as a *retraxit,* or a judgment upon the merits, so as to constitute a bar to another action for the same cause. It is simply a judgment of discontinuance, where the court erred in ordering the defendant to pay the costs, where such order was made by the consent of the parties. It was also held that the entry that the defendant pay the costs was not even *prima facie* evidence of an accord and satisfaction. It was said, more at large, in that case that, "At common law there is no form of an entry in the books of a judgment dismissing an action. Every judgment against a plaintiff is either upon a *retraxit, non pros.,* nonsuit, *nolle prosequi,* discontinuance, or a judgment on an issue found by the jury in favor of the defendant, or upon demurrer. The inducements or preliminary recitals in these several kinds of judgments are variant, but the conclusion in each is always the same; it is as follows: 'Therefore, it is considered by the court that the plaintiff take nothing by this writ, and that the defendant go without day and recover of the plaintiff his costs, etc.' If the entry above mentioned could be considered as a *retraxit,* or a final judgment on the merits, it would bar the plaintiff's action; otherwise it would not. A *retraxit* it cannot be, for that is always made in person in open court, when the trial is called. 2 Arch. Prac., 250; 3 Thomas Coke, 500. The issue upon the plea of "release" in the county court was not tried by a jury; so that the said entry could not be considered a judgment upon a verdict. The entry does not show that the merits of the cause were passed upon. We know of no reported case like it in this State. We must, however, consider it as nothing more than a judgment of discontinuance, where the court erred in ordering the defendant to pay the cost, or it is such a judgment with the consent of the parties that the defendant should pay the costs. *Carter v. Wilson,* 2 Dev. and Bat., 276. It is therefore no bar to this action. Arch. Prac., 235; Maule and Selw., 153."

The case of *Bond v. McNider* has been frequently approved by this Court: *Plummer v. Wheeler,* 44 N. C., 472; *Carr v. Woodleff,* 51 N. C., 400; *Idding v. Hiatt, ibid.,* 402; *Koonce v. Pelletier,* 82 N. C., 237, 240; *Rollins v. Henry,* 84 N. C., 570, 579; *Weeks v. McPhail,* 129 N. C., 73.

In *Koonce v. Pelletier, supra, Smith, C. J.,* said that "The dismissal, on account of its vague and unsatisfactory statements and not being based upon an examination into the merits, is rather of the nature and effect of a nonsuit, as was held in *Bond v. McNider,* 25 N. C., 440, and is not a bar to a subsequent application." It was also held in *Campbell v. Potts,* 119 N. C., 530, that "Where, in an action to recover land, the defendant pleaded in bar a former judgment in an action brought

against her by plaintiff's grantor, in which defendant had denied the grantor's title, and it appeared that there had been no trial of such former action, but only a judgment of dismissal, such judgment of dismissal was not a bar to the existing action." Black on Judgments states this principle with clearness and accuracy. There it is said: "The mere dismissal of a complaint in an action at law, even after the plaintiff has put in his evidence on the trial, has no more force than a nonsuit at common law, and does not bar a subsequent action for the same cause. As there may be various sorts of nonsuits, considered with reference to the stage of the cause at which entered, and in respect to the question of the plaintiff's acquiescence, so will it be with judgments of dismissal. And in the first place it is perfectly evident that a judgment entered upon the dismissal of a complaint because of the plaintiff's failure to appear, where there was no trial of the action and no consideration of its merits, cannot be a bar to a subsequent suit. And when it appears from the record that the court never determined the merits of the controversy nor rendered any judgment affecting the same, but simply dismissed the plaintiff's action, without trial and without evidence, such judgment does not support a plea of former adjudication." Numerous cases which are collected in the note fully sustain this text. And to the same effect is Freeman on Judgments (4 Ed.), sec. 261, where we find this statement: "Judgments of nonsuit, of *non prosequitur,* of *nolle prosequi,* of dismissal, and of discontinuance are exceptions to the general rule that when the pleadings, the court, and the parties are such as to permit of a trial on the merits, the judgment will be considered as final and conclusive of all matters which could have been so tried. A nonsuit 'is but like the blowing out of a candle, which a man at his own pleasure may light again.' Under no circumstances will such a judgment be deemed final, whether entered before or at the trial." And again, at p. 476: "A dismissal or nonsuit not determining the rights of the parties cannot support the plea of *res adjudicata.* Nor will the reasoning and opinion of the court upon the subject, on the evidence adduced before it, have the force and effect of a thing adjudged, unless the subject-matter be definitely disposed of by the judgment."

We do not say that where it appears that the merits have been considered and passed upon, the judgment of dismissal may not be successfully pleaded as a former adjudication, but no such thing occurred here. The other suit was dismissed, with costs against the plaintiff, simply because he had failed to restore the lost record, and in no sense were the merits touched upon. It could have no more legal effect than a nonsuit, where the plaintiff fails to prosecute his cause, or is called and fails to appear. His laches put him out of court, and that is all it does, and he may come back again at his will and pleasure and pursue

the same cause without being affected by any bar of the former judgment.

Nor do we think that the plaintiff can gain anything by reason of the fact that the suit was not revived within one year after the dismissal. That is required to be done only under Revisal, sec. 370, where the statute of limitations would otherwise bar by the lapse of the period prescribed for bringing the suit.

It was held in *Keener v. Goodson,* 89 N. C., 273, that section 370 was intended to enlarge the period of limitation and not to abridge it. But the conclusive answer to this contention is that the defendant was in possession of the land all the time from the day of the sale, and the statute did not run against her for that reason, so that the failure to bring her action within the supposed year of grace is not material. That her possession, and that of her father, suspended the operation of the statute has been well settled. *Mast v. Tiller,* 89 N. C., 423. The provision as to bringing a new action within one year after a nonsuit or dismissal, reversal, or other termination of the first suit, as prescribed in the statute, refers only to those cases where the statute of limitations is applicable, and would bar, but for this clause, which, if complied with, saves the cause of action. Clark's Code (3 Ed.), sec. 142 and note. If the possession of the *feme* defendant, since the sale, prevents the bar of the statute, she did not need the additional time of one year within which to sue. The one-year clause applies only where the statute is operative and would defeat the new action if it were not commenced with the extended period, as above shown.

But, while the plaintiff was not entitled to judgment upon the record, we are of the opinion that the judge committed an error in the instruction as to the quantum of proof, in the seventh issue. It was intended by the issue to engraft a parol trust upon the legal title acquired by D. S. Powell, at the sale, which afterwards passed, by his deed, to Effie Grimes, the plaintiff. The deed, on its face, purports to convey to her a fee simple absolute in the land, and defendants seek to change this into an estate in trust, the terms of the latter being that Alfred Andrews should be entitled by virtue of a prior agreement with D. S. Powell to have him, Powell, reconvey the land to him upon reimbursing Powell his expenditures. This essentially changes the deed, and, as the law strongly presumes that it was correctly written, it requires more than a bare preponderance of the evidence, or the overbearing of the evidence, to meet this strong presumption and overcome it. This case is not unlike the many we have decided which involve the same question, as to the quantum of proof, where the deed is substantially varied from the "written words," which we have so often said must abide and control the rights of the parties unless the requisite evidence is forthcoming. We have, at this term, fully discussed the matter in several cases, re-

affirming what was decided in *Ely v. Early,* 94 N. C., 1; *Harding v. Long,* 103 N. C., 1; *Cobb v. Edwards,* 117 N. C., 253; *Avery v. Stewart,* 136 N. C., 426; *Lehew v. Hewett,* 138 N. C., 6; *King v. Hobbs,* 139 N. C., 171; *White v. Carroll,* 147 N. C., 330; *Gray v. Jenkins,* 151 N. C., 80; *McWhirter v. McWhirter,* 155 N. C., 145. The cases at this term in which we applied the same rule of evidence are *Ray v. Patterson, ante,* 226; *Lamb v. Perry,* 169 N. C., 436, and *Glenn v. Glenn,* 169 N. C., 729, to all of which we refer without further comment, except *Glenn v. Glenn, supra,* 169 N. C., at p. 730, where it is said to be established with us that "where a defendant holds under a deed formally conveying to him the legal title to real property, and a claimant is seeking to correct a mistake in the instrument or annex a condition to it or engraft a trust upon it, he is required to make out his claim by clear, strong, and convincing proof. *Cedar Works v. Lumber Co.,* 168 N. C., 391; *Ely v. Early,* 94 N. C., 1." *Cobb v. Edwards* and *Ray v. Patterson, supra,* are exactly like this case, and certainly so in principle. This error entitles the plaintiff to a new trial, which is ordered.

New trial.

DEFENDANTS' APPEAL.

WALKER, J. The court was right in refusing to enter judgment of nonsuit against the plaintiff. The defendants were not entitled to judgment upon the verdict, so far as it related to the parol trust, as the instruction of the court upon the seventh issue was erroneous, as we have held in the plaintiff's appeal; and a new trial was the necessary result. The motion for a nonsuit was made by defendants, we presume, in order to preserve their rights, if we had decided that there was no error as to that issue. Nor were defendants entitled to judgment upon the verdict, so far as it related to the ninth and eleventh issues, and the fourteenth and fifteenth issues, as the court set them aside, and very properly. The possession of Alfred Andrews was not adverse prior to the sale by the commissioner, F. G. James, in 1901, as a man cannot hold possession adversely to himself. Alfred Andrews owned the land on 21 February, 1900, when he mortgaged it to D. S. Powell, and his possession from that time to the day of the sale by the commissioner was subordinate to the title of his mortgagee. *Parker v. Banks,* 79 N. C., 480, where it was said by *Justice Bynum:* "It is well settled that the mortgagor is the tenant of the mortgagee, and, therefore, that his possession is not hostile, or adverse, to the mortgagee." So that, nothing else appearing, except the simple relation of mortgagor and mortgagee, with the former in possession of the land, there was no adverse holding by him, and such a possession could not commence until after the sale, when the title had passed from him, or his heir if he had died intestate, to the purchaser. He must have twenty years adverse possession

after that time before the title will be restored to him, and he cannot rely on his former title as color, for he lost that by the sale. He must have acquired a new color after the sale. We discussed this phase of the case fully in *Call v. Dancy,* 144 N. C., 495, following the decisions in *Johnson v. Farlow,* 35 N. C., 84, and *Wilson v. Brown,* 134 N. C., 400.

There being no adverse possession by the defendants under color, and none without color sufficient in length of time to vest a new title in defendants, the judge was clearly right in setting aside the ninth and eleventh issues; and as there was nothing left for the fourteenth and fifteenth issues to rest upon, it follows logically that they also should have been set aside.

The last three issues were dependent upon the findings of the jury in response to those preceding them, and were submitted merely to determine the title, as between the parties, according to the verdict on the other issues.

The judge left the tenth issue undisturbed, we presume, for the purpose of ascertaining whether the defendants had been in possession, claiming the land as their own, as bearing on the question of notice to plaintiff of defendants' equity, growing out of the alleged parol trust, the general rule being that possession constitutes such notice. *Justice Dillard* said, in *Heyer v. Beatty,* 83 N. C., 289: "The rule in equity undoubtedly is that a party taking with notice of an equity takes subject to that equity; that is to say, he is assumed to take and hold only such interest in the property conveyed as his vendor might honestly dispose of, having due regard to the equities existing against him in favor of others. Adams Eq., 151; *Webber v. Taylor,* 55 N. C., 9; *Maxwell v. Wallace,* 45 N. C., 251. And the kind of notice spoken of in said rule may be an actual or constructive notice. In this case there is no pretense of actual notice to the plaintiff of the right claimed by defendant, but it is plainly implied, from the terms in which the instruction was asked, that the defendant claimed only to affect the legal title of the plaintiff with a trust from a notice by construction from the mere fact of his possession at the time of the sale. Possession is suggestive of title or right in the possessor, and a prudent man should and would inquire into such apparent right before trading with another; and if he do not, it is but just to the rights of the party in possession to hold the purchaser as affected with notice of the equities in his favor." Many cases have approved this doctrine. *Edwards v. Thompson,* 71 N. C., 177; *Tankard v. Tankard,* 79 N. C., 55 (*s. c.,* 84 N. C., 288); *Bost v. Setzer,* 87 N. C., 187; *Johnson v. Hauser,* 88 N. C., 388; *Staton v. Davenport,* 95 N. C., 12; *Campbell v. Farley,* 158 N. C., 42. This rule, if it appears, by the facts developed at the next trial, to be applicable, will be available to the party who may benefit by it.

As to Effie Grimes being a purchaser for value, we presume the evidence on that question will be made clearer hereafter. There was some dispute between counsel as to the effect of an entry in the record apparently bearing upon that issue, and a petition for a *certiorari* was filed for the purpose of having it appear more certainly what the entry meant and how it should be used in the case; but we did not consider it necessary that notice of the petition should be issued, as the matter may be differently presented if the case again comes before us.

We would suggest that the fourth issue be worded so as to submit the inquiry to the jury in this form: "Was Effie Grimes a purchaser for value?" and the eighth issue in this form: "Did she have notice of the equity alleged to have arisen out of the agreement between Alfred Andrews and D. S. Powell?" The issues as to the parol trust, as to Effie Grimes being a purchaser for value and as to her having notice of the equity, should be submitted together and consecutively, as they will now constitute defendant's main if not sole ground for a recovery. We suggest the change in the form of the issue as to plaintiff being a purchaser for value, because in its present form an answer as to what she paid for the land would not necessarily determine whether or no she bought for value, as, in the legal sense of that term, she may have paid more or less than its value for the land.

The court committed no error in refusing to sign the judgment tendered by the defendant, as, in the view we have taken of the case, they were not entitled to it. We may add, though, that if D. S. Powell and R. J. Grimes, the junior encumbrancers, were parties, with F. J. H. P. Bryant, the senior mortgagee, and Alfred Andrews, the mortgagor, to the foreclosure suit, we do not see why D. S. Powell did not acquire a good title, unless Powell made the agreement with Andrews as alleged by defendants and the plaintiff did not purchase from him for value and without notice of it, because, with the consent of the court, D. S. Powell, the junior encumbrancer, could buy, being a party to the suit, and the court sold the legal title and all the equities. Whether D. S. Powell could have bought if he had not been a party to the foreclosure suit, but simply the holder of a junior mortgage, we need not decide. We held in *Jones v. Williams,* 155 N. C., 179, that the holder of a junior mortgage could not be deprived of his rights by a sale under a decree in a foreclosure suit to which he was not a party, and it would seem, without finally deciding the question, as all the facts are not now certainly and definitely before us, that a sale under a foreclosure decree would pass a good title against all who were made parties to the suit; and if this be so, *Taylor v. Heggie,* 83 N. C., 244, relied on by the defendants, would have no application. We prefer, though, not to give any final or conclusive opinion upon this question until we are better informed as to the facts. It appears, but only by inference from what

is stated in the record, that all persons, mortgagor and mortgagee, interested in a foreclosure, were made parties to the suit in which the sale was decreed.

The general result in both appeals is that a new trial must be had, and the issues rearranged so as to eliminate those which have been rendered useless or immaterial by this opinion, and some changed so as to present the true inquiries more clearly and sharply to the jury and in a more compact form.

There was error in plaintiff's but none in this appeal.

No error.

It will, therefore, be certified accordingly to the Superior Court.

In plaintiff's appeal, New trial.

In defendants' appeal, No error.