J. T. TAYLOR. JR., AND HIS WIFE, DORA W. TAYLOR v. ELIJAH SCOTT, GEORGE SCOTT, JANIE BRYANT AND BARTHA SCOTT

AND

MERIWEATHER LEWIS v. ELIJAH SCOTT, GEORGE SCOTT, JANIE BRYANT AND BARTHA SCOTT.

(Filed 11 October, 1961.)

**1. Ejectment § 7—**

In an action to recover possession of land and damages for trespass thereon, defendants' denial of plaintiffs' title places the burden on plaintiffs of proving title in themselves.

**2. Ejectment § 10—**

Where plaintiffs claim record title from a common source, but the only evidence identifying the land claimed with the descriptions in their deeds is the testimony of a surveyor that the map prepared by him was based upon his assumption, without personal knowledge, that a certain branch referred to by witnesses by a particular name was in fact the same as a branch called by another name on his map, and that he disregarded the call in the deed designating the prong of the branch, *is held* insufficient to carry plaintiffs' burden of identifying the lands claimed, and nonsuit against them should have been entered.

**3. Same; Judgments § 33—**

In an action involving title to land, judgment of nonsuit for the insufficiency of plaintiffs' evidence identifying the land claimed with the descriptions in their deeds does not have the effect of adjudicating title in the defendants.

**4. Adverse Possession § 23—**

Evidence of a defendant in an action in ejectment that he had been in actual possession of a specific portion of the *locus in quo,* and had occupied and cultivated the tract under known and visible lines and boundaries in the character of sole owner, is sufficient to require the submission of the issue of his acquisition of title to such portion by adverse possession.

**5. Same: Adverse Possession § 7—**

Where parties claim the *locus in quo* as heirs of their ancestor, and introduced evidence of continuous possession by one or the other of them of the entire tract as tenants in common for more than 20 years, the evidence is sufficient to be submitted to the jury on their claim of title by adverse possession as against a stranger, since the possession of any one of them inures to the benefit of all, and it is not required that each cotenant be on the property during the entire time.

APPEALS by plaintiffs and defendants from *Cowper, J.,* May 1961 Term of CRAVEN.

In controversy between the parties is the ownership of an area of land containing approximately 400 acres. Plaintiffs Taylor assert title to a specifically described part constituting approximately the south-

ern half of the area, and trespass thereon by defendants. They seek an adjudication of their title and damages for the trespass.

Plaintiff Lewis alleges ownership of a specific area constituting the northern portion and trespass thereon. He likewise seeks an adjudication of his title and damages for the trespass.

Defendants denied plaintiffs were the owners of the land described in the complaints. For affirmative relief they allege that they, with one Majetta Scott, were the owners as joint tenants or tenants in common of the land in controversy except for seven specifically described parts. George Scott additionally alleged he was the owner in severalty of two of the seven areas excepted from the claim of joint ownership. Based upon the allegations of ownership as cotenants and in severalty, defendants prayed that their respective titles be declared.

The area in controversy is bounded on the north by a ditch and branch known as the Harmon Wilken Branch, on the east by the west and south prongs of Bachelor Creek, on the south by Thursday Hill Branch, and on the west by a public highway known as Dry Mourner Road from Tuscarora to Rhems.

A branch separates the land claimed by Lewis from the land claimed by Taylors.

The parties consented to a consolidation for trial because of identity of evidence and legal principles supporting their respective contentions.

At the conclusion of the evidence the court sustained defendants' motions to nonsuit plaintiffs. Plaintiffs' motions to nonsuit defendants were likewise allowed. Plaintiffs and defendants excepted and appealed.

*Bernard B. Hollowell and R. E. Whitehurst for plaintiffs.*
*Barden, Stith & McCotter, L. T. Grantham, and Lee & Hancock for defendants.*

Rodman, J.   The appeals present for determination the correctness of the rulings allowing the several motions to nonsuit.

When a party's claim of title is denied, he has the burden of proof. *Chisholm v. Hall, ante* 374; *Jones v. Turlington,* 243 N.C. 681, 92 S.E. 2d 75; *Locklear v. Oxendine,* 233 N.C. 710, 65 S.E. 2d 673; *Mobley v. Griffin,* 104 N.C. 112, where the methods of showing title are summarized. Here plaintiffs did not attempt to show a record title tracing to the soverign nor did they attempt to show title by possession. To support their claim of title, they assert they and defendants claim under a common source from which they have the superior title, with the further contention defendants are estopped by judgment to deny plaintiffs' title.

The assertion of superior title from a common source is based on

these facts: Defendants are the descendants and heirs at law of Stephen Scott and Sophie Scott, who mortgaged the lands described in deeds to Stephen Scott, recorded in Craven County in Book 99, p. 69, and Book 115, p. 192. The lands so mortgaged were sold under the power of sale there given (See *Scott v. Lumber Co.*, 144 N.C. 44.) ; Blades purchased; plaintiffs have acquired the title of Blades to the mortgaged property.

The mere fact that plaintiffs have acquired Blades' title to the lands mortgaged by Stephen Scott, ancestor of defendants, is not of itself sufficient to establish, *prima facie,* plaintiffs' title. The parties must not only trace their title to a common source, but they must trace title to the land in controversy to that source. *Skipper v. Yow,* 249 N.C. 49, 105 S.E. 2d 205; *Seawell v. Fishing Club,* 249 N.C. 402, 106 S.E. 2d 486.

Plaintiffs offered no evidence to show the location of the lands described in the deed to Stephen Scott recorded in Book 99, p. 69.

The description in the deed to Stephen Scott recorded in Book 115, p. 192, is as follows: ". . . adjoining the lands of Wilkins Wetherington, H. Davis and others, bounded as follows, *Viz:* BEGINNING at the feet of Batchelors Creek and runs up the West Prong to School House Branch then up said Branch to the Public Road thence northwardly with said road to Hezekiah Davis thence with his line to Long Branch thence down said Branch to the east prong of Batchelors Creek thence down the same to the BEGINNING containing two hundred acres more or less."

Court surveyors were appointed; they made maps showing the contentions of the respective parties. The maps prepared by the surveyors show the location of the public road, west prong of Bachelor Creek, the main stream of Bachelor Creek, the south prong of Bachelor Creek. The west prong of Bachelor Creek flows southeastwardly. The south prong of Bachelor Creek flows northeastwardly. The northern boundary of the land in controversy is a ditch and the Harmon Wilken Branch which flows into the west prong of Bachelor Creek. The maps do not show nor was any attempt made to locate the lands of Wilkins Wetherington or Hezekiah Davis, Long Branch, or the east prong of Bachelor Creek. A branch makes out of the south prong of Bachelor Creek. It heads in a westwardly direction towards the public highway. This branch is designated on the map of one of the court surveyors as Edie Bachelor Branch, on the map of the other court surveyor as School House Branch or Edie Bachelor Branch. This branch divides the area in controversy into two parts of approximately equal areas. Surveyor Brooks, as witness for plaintiffs, indicated on the court map the location of the land described in Book 115; p. 192. He testified that

he did not know the beginning point called for, and to locate School House Branch he had disregarded the call in the deed, "up the run of the West Prong"; to the contrary he had gone up the run of the south prong; he made no attempt to locate the remaining calls of the deed other than a public road. The correctness of his location is dependent upon his assumption that what the other witnesses referred to as Edie Bachelor Branch is in fact School House Branch, and the other calls for natural boundaries are immaterial. He testified: "It is my understanding, although I'm not sure, that the southward branch is School House Branch. I was not brought up in the neighborhood. The only time I ever heard it called the Edie Bachelor Branch was when Mr. Daniels labeled it that on his map, I believe. I got my information that it was called the School House Branch off of a map that Mr. Potter made in, I don't know the date on it. At the time of this survey I was on the ground. It was pointed out to me that was the School House Branch. I don't recall the man's name who pointed it out to me as School House Branch, but he lived out in that neighborhood. It was a colored man."

Manifestly the testimony is insufficient to locate the land described in the deed to Stephen Scott, recorded in Book 115, p. 192; nor does it identify that land as the land here in controversy. All witness Brooks purported to say was: "The map shows plaintiffs' contentions with respect to the location of the lands mortgaged by Stephen Scott." Brooks did not pretend to make a statement of fact within his knowledge. Plaintiffs failed to carry the burden of identifying the lands which Blades acquired at the foreclosure sale as the lands in controversy.

Plaintiffs, to support their plea of *res judicata*, rely on a judgment of nonsuit rendered in 1956 by the Superior Court of Craven County in an action in which present defendants were plaintiffs and present plaintiffs were defendants. That judgment was affirmed by this Court on 22 May 1957. See *Scott v. Lewis*, 246 N.C. 298, 98 S.E. 2d 294. Plaintiffs lost there for failure to offer evidence to support their allegations. *Winborne, C.J.*, writing for the Court, said: "In the instant case the evidence offered is insufficient to identify the lines and boundaries of any particular portion in actual possession." The mere failure of the plaintiffs in that action, present defendants, to offer sufficient evidence to establish their title did not create titles for present plaintiffs. *Grimes v. Andrews*, 170 N.C. 515, 87 S.E. 341.

The court properly allowed the motions to nonsuit plaintiffs.

Defendant George Scott's assertion of ownership in severalty is directed to two specifically described tracts. The boundaries of these two areas are the edges of fields. There is evidence that George Scott lives on one of these fields and has continuously for more than twenty

years had possession of both areas to the boundaries of the fields, and during said period has asserted that his exclusive right to occupy and cultivate was an incident of his ownership. This evidence was sufficient to require submission of an appropriate issue to the jury. *Prima facie,* he had carried the burden of proof. Its weight was for the jury.

In support of the claim of defendants as cotenants Elijah Brown testified: "I have helped the Scotts cut crossties, wood and tobacco wood on the land in the last 30 or 35 years. These lands on that map excluding those cleared portions have been reputed in the neighborhood for the last 30 or 35 years to belong to the Scotts—Bartha, Elijah, Janie, George, and Majetta's father, John. During the last 30 or 35 years I have cut crossties up and down the south prong from Thursday Hill Branch and back of the church and Lamb Farrow's field.

"The area on the map I pointed out as the George Scott place is reputed in the community to be George Scott's. . . . The defendants worked on all their land other than the areas cut off on the map and they cut wood, etc. Each of the defendants went on each part of the land, all worked together cutting on it. George Scott worked on it like the rest. And there were no lines in there dividing any of it off, saying this part belongs to Elijah and this part belongs to another one of the defendants; they worked the whole thing together."

William Henry Simmons, who had known the land for thirty years, testified: "I always heard the defendants in this suit owned the woodland. They all claimed it together. I do not know of any Scott that is claiming any particular piece other than what I pointed out on the map."

The foregoing testimony and similar testimony in the record differentiate this case and the assertion of title made by present defendants from the testimony in *Scott v. Lewis, supra.*

The boundaries of the land claimed by defendants as cotenants are visible and well known. There is evidence from which the jury can find that this claim of cotenancy is accompanied by continuous and exclusive possession for more than thirty years. Defendants base their claim of cotenancy on an assertion of title and possession by their ancestors Stephen and Sophie Scott.

A claim of title founded on possession of an ancestor descends to his heirs, who, continuing in possession, hold as cotenants. *Barrett v. Brewer,* 153 N.C. 547, 69 S.E. 614; *Shuler v. Lumber Co.,* 180 N.C. 648, 105 S.E. 399. The possession of one cotenant inures to the benefit of all. *Winstead v. Woolard,* 223 N.C. 814, 28 S.E. 2d 507; *Johnston v. Case,* 131 N.C. 491; *Winborne v. Lumber Co.,* 130 N.C. 32; *Tharpe v. Holcomb,* 126 N.C. 365; *Peveto v. Herring,* 198 S.W. 2d 921. It was

not necessary for each cotenant to be on the property during the entire time. The possession of one complemented the possession of the other when their claim was joint and not adverse.

On plaintiffs' appeals—Affirmed.

On defendants' appeals—Reversed.