INTERNATIONAL PAPER COMPANY v.
MANLEY JACOBS AND WIFE, GENEVA JACOBS.

(Filed 11 January 1963.)

**1. Trespass to Try Title § 3—**

It is not sufficient for plaintiff, in an action for trespass in which title to a specific area is in dispute, to introduce evidence of good paper title, but he must show also that the area claimed is embraced within the descriptions in his instruments.

**2. Trespass to Try Title § 5—**

Where plaintiff introduces some evidence that the disputed area was embraced within the description in the instruments constituting his chain

of title, the question is properly submitted to the jury, and the jury's negative answer to the issue is conclusive in the absence of error of law.

**3. Same—**

Where plaintiff claims under good paper title and also that it had obtained title by adverse possession, instructions that plaintiff had shown a good paper title, and further that plaintiff's instruments constituted color of title, with a correct definition of color of title, are not erroneous as inferring that plaintiff's instruments were in fact defective, since if the descriptions in plaintiff's instruments do not embrace the area in dispute, as to such area they could be only color of title.

**4. Adverse Possession § 23—**

Evidence of defendants' actual hostile, open, and notorious adverse possession of the area in dispute by themselves and those in privity with them, in subjecting the land to its reasonable uses in the character of owner, *held* sufficient to take the issue to the jury.

**5. Adverse Possession § 6—**

The possession of the ancestor may be tacked to the possession of the heir where there is no *hiatus* or interruption in the possession.

**6. Same—**

The possession of the husband of an heir and the possession of a widower of an heir, when not adverse to the heir but in recognition of the heir's right, inures to the benefit of subsequent heirs and prevents a *hiatus*, since their possession is in privity with them.

APPEAL by plaintiff from *McKinnon, J.,* March 1962 Term of BLADIN.

This action was begun 8 May 1957 to determine ownership of a tract of land in Bladen County on which defendant had cut timber. Plaintiff alleges it is the owner of 4924 acres conveyed to it on 20 June 1949 by West Virginia Pulp & Paper Co., and that the timber cut was worth $300. It prays that it be adjudged the owner of the land specifically described in the complaint and for $600 for the trespass.

Defendants denied the allegations of ownership and trespass. Additionally defendants asserted ownership of a tract containing 126 acres conveyed to them by Rena Graham Freeman *et al.* by deed dated 29 March 1957.

The court, to determine the controversy, submitted four issues, answered by the jury as follows:

"1. Is the plaintiff the owner of the lands described in the Complaint, and entitled to the immediate possession of same, excluding Church lot?

"ANSWER: NO.

"2. Did the defendant, Manley Jacobs, trespass upon the lands of the plaintiff and cut and remove therefrom, as alleged in the Complaint?

"ANSWER. NO.

"3. What amount, if any, is plaintiff entitled to recover of the defendant, Manley Jacobs, by reason of said trespass and cutting of timber?

"ANSWER: NONE.

"4. Are defendants the owners of and entitled to the immediate possession of the lands described in the Answer, excluding Church lot?

"ANSWER: YES."

Judgment was entered adjudging defendants owners of the land specifically described in the answer. Plaintiff excepted and appealed.

*Clark, Clark & Grady for plaintiff appellant.*
*Hester and Hester and J. B. Eure by Worth H. Hester for defendant appellees.*

RODMAN, J.  Notwithstanding plaintiff's allegation that it owned 4924 acres and defendants' denial of that allegation, the parties at the trial narrowed the dispute to the question of ownership of the land specifically described in the answer.

Plaintiff, to recover, had the burden of establishing it owned this area. Unless some error was made in the trial relating to plaintiff's title, errors, if any, with respect to defendants' title would not seem prejudicial. Nevertheless, we have considered each of the exceptions enumerated in plaintiff's brief.

Plaintiff contends it has established good title to the area in dispute by paper title or by adverse possession for the requisite period of time.

To support its claim of paper title, it offered a grant dated 3 December 1806 for 200 acres to Shadrick Jacobs. It then offered sundry deeds which it contends vested title to this 200 acres in Eric Norden; a deed from Norden to Cooper River Timber Corporation dated 18 February 1931 for 4924 acres as described in the complaint; a deed from Cooper River Timber Corporation to West Virginia Pulp & Paper Co., dated 19 November 1935, describing 6811 acres, which includes the 4924 acres conveyed by Norden to Cooper River Timber Corporation; and a deed from West Virginia Pulp & Paper Co. to plaintiff for the identical 4924 acres described in the complaint.

Where title to a specific area is in dispute, ownership is not established by merely offering a grant for a larger area and subsequent conveyances transferring the title of the patentee to claimant. Claimant must go further and show the area claimed lies within the area described in the grant and subsequent conveyances. *Day v. Godwin,* post, 465.

Here defendants maintained throughout the trial that the Jacobs grant and the deeds under which Norden asserted title did not cover the land in controversy. Their evidence tended to show that when Norden had the 4924 acres surveyed, he excluded the lands claimed by defendants.

It may be doubted if the description in some of the instruments under which plaintiff asserts title are adequate to convey anything, *Massey v. Belisle,* 24 N.C. 170, *Mann v. Taylor,* 49 N.C. 272, but the court nevertheless treated the instruments as legally sufficient and specifically charged the jury that plaintiff had good title to the land if in fact the disputed area was within the boundaries given in those instruments. Since the jury answered the first issue "no," the jury necessarily concluded the descriptions in the deed under which Norden claimed did not embrace the land in controversy.

Plaintiff's witnesses fixed the location of the lines of the deed by Norden and the subsequent conveyances so as to embrace the land in dispute; but it offered no witness who testified to having surveyed the boundaries set out in the several deeds under which Norden claimed. It did not attempt to establish any of the corners called for in those instruments. The surveyor testified he merely plotted the lines on his map. If it be conceded there was any competent evidence locating the lands described in the deeds under which Norden claimed, *Day v. Godwin, supra,* the question of location was properly left to the jury.

Plaintiff did not rely solely on its paper title. The court charged the jury: "I instruct you that under the law an instrument constitutes color of title if it purports to be a conveyance of title and is defective or void for matters outside the record, and if one takes a deed which purports to describe a tract of land which reasons outside of the record is defective or which fails to connect with a good title, and if a person holds the land described in that deed under the deed in question then I instruct you that such a deed is color of title, although not true title in itself. If a person has such a deed of record then adverse possession is not required for more than seven years and he may perfect title to that land by adverse possession under color of title for that period. I instruct you that the deeds offered from Eric Norden to Cooper River Timber Company and from Cooper River Timber Company to West Virginia Pulp & Paper Company and from West Virginia Pulp & Paper Company to the plaintiff are such instruments as constitute color of title within the meaning of this law."

Plaintiff assigns the quoted portion of the charge as error. It argues that the jury should infer from this charge that the instruments under which Nordan claimed were in fact defective and conveyed no title. The contention is without merit. The court had previously expressly

told the jury that plaintiff had good paper title if the deeds under which Norden claimed covered the land in controversy. This made it necessary for him to draw a distinction between good paper title and title acquired by adverse possession under color and to explain the meaning of color of title. He not only defined color but specifically told the jury the Norden and subsequent deeds were color of title. They could not be more than color if the deeds to Norden did not cover the disputed area.

The court told the jury in language not subject to misinterpretation to answer the first issue in the affirmative (1) if the conveyances to Norden covered the land in controversy; or (2) if these instruments did not embrace the land in controversy, the answer would, nevertheless, be "yes" if plaintiff or its predecessors in title, West Virginia Pulp & Paper Co. or Cooper River Timber Corporation, had seven years' continuous possession, because the conveyances to them were color of title.

The court defined the term "possession" and informed the jury that possession of any part of the area described in the color would be constructively extended to the outer boundaries of the color except for such part, if any, as might be in the actual possession of another. Plaintiff does not challenge the correctness of these portions of the charge relating to its title.

Defendants make no pretense of having a good paper title or title by possession under color. They say their grantors and those in privity with them have been in actual possession for more than twenty years, which possession has been both continuous and exclusive under a claim of right. Their evidence is sufficient for a jury to find these facts: Eli Jacobs, prior to 1900, pointed out the boundaries of the land claimed by him. These boundaries were indicated by old marked trees. The boundaries of the tract claimed were obvious. When Norden surveyed his land, he placed concrete monuments at the corners claimed by Jacobs but did not claim the land in controversy. Eli Jacobs had a child, Susannah, who married Bill Graham. They had two children, Rena, who married W. J. Freeman, and Lonnie, who married D. J. Jacobs. (The record does not disclose dates of death of Eli Jacobs, Susannah Graham, or Bill Graham, husband of Susannah.) Lonnie, wife of D. J. Jacobs, is still living. D. J. Jacobs, one of defendants' grantors, testified: "During the time Eli Jacobs was alive he was in possession of this tract of land that is in dispute. After his death Bill Graham and the heirs were in possession of it. That is the same Bill Graham that I said married Eli Jacobs' daughter. William Graham and Susannah Graham are both dead. Susannah died first; he died later on. . .After Susannah Graham died Bill Graham was in possession of this tract of land. After Bill Graham died his heirs were in pos-

session. . . .Since the death of Bill Graham and up until the present time W. J. (Freeman) and the heirs have been in possession of this tract of land. Bill Graham's heirs." He testified he started working on the land as early as 1901. Other portions of his testimony place Eli Jacobs in possession as early as 1893. W. J. Freeman testified he took possession in 1900.

Witnesses testified that those claiming under Eli Jacobs had planted tobacco beds on the land for several years, had cut crossties and timber, had a sawmill on the land, and had otherwise utilized the land as any owner would. These various acts of possession, according to the testimony, extended to the outer boundaries. Defendants' assertion of title was well known in the community. It was reputed to be their land. This possession had been continuous at least from 1900 or thereabouts until Jacobs, Freeman, and their wives, children of Susannah Graham and grandchildren of Eli Jacobs, conveyed to defendants.

The court properly refused to direct a verdict in plaintiff's favor or to nonsuit defendants' claim for affirmative relief. The evidence was sufficient to permit the jury to find that defendants' grantors and those in privity with them had had actual possession of the disputed area for more than twenty consecutive years—a possession marked by visible lines and boundaries, notorious and adverse to all others.

To establish possession for the requisite twenty years, it was, as the court charged, permissible to tie the possession of an ancestor to that of the heir when there was no hiatus or interruption in the possession. As said by Johnson, J., in *Newkirk v. Porter*, 237 N.C. 115 (120), 74 S.E. 2d 235: ". . .the adverse possession of an ancestor may be cast by descent upon his heirs and tacked to their possession for the purpose of showing title by adverse possession." *Alexander v. Gibbon*, 118 N.C. 796; *Atwell v. Shook*, 133 N.C. 387; *Ramsey v. Ramsey*, 224 N.C. 110, 29 S.E. 2d 340; *Locklear v. Oxendine*, 233 N.C. 710, 65 S.E. 2d 673; *Williams v. Robertson*, 235 N.C. 478, 70 S.E. 2d 692; *Taylor v. Scott*, 255 N.C. 484, 122 S.E. 2d 57.

Plaintiff contends the evidence is not sufficient to establish twenty years continuous possession by defendants' grantors. This contention is based on the assertion there was no privity between Bill Graham and his father-in-law, Eli Jacobs, nor was there privity between W. J. Freeman and D. J. Jacobs and their mother-in-law, Susannah Graham. The contention would merit consideration if it appeared the husbands were claiming adversely to their respective wives, since it does not affirmatively appear that the wives had physical possession of the land; but the evidence does not show that the sons-in-law were claiming adversely to their spouses. Freeman's testimony, "I came into possession of land by marriage in 1900," at least carries the implication

that he was acting in behalf of his wife and not adversely to her. Nor was Bill Graham's possession adverse to the estate of his deceased wife. He was tenant by curtesy consummate and entitled to possession. *Stockton v. Maney,* 212 N.C. 231, 193 S.E. 137; 15 Am. Jur. 270. His possession inured to the benefit of his and Susannah's children. *Ramsey v. Ramsey, supra.*

We have examined carefully each of the assignments on which plaintiff relies. We find no prejudicial error. The learned trial judge clearly and accurately stated the law which the jury should apply as they might find the facts on the conflicting testimony. The jury has resolved this conflict adversely to plaintiff. We have no authority to review its determination of the factual questions.

No error.